The first case on the calendar is number 2871, Wagschal, I'm not sure I'm pronouncing that right, versus Skoufis. Mr. Wagschal, please correct me in the pronunciation. Wagschal. Wagschal, thanks. Good morning, Your Honor, as may I please report. Qualified immunity should not be applied in this case for the following reasons. First, Senator Skoufis violated clearly established law when he blocked me from his official government Facebook page, thereby preventing me from further commenting on his posts and rendered all of my previous comments hidden and invisible. Second, applying qualified immunity in this case would not only render Section 1983 meaningless, but it would defeat the purpose of the doctrine itself, which was designed to ensure that government actors perform their duties boldly and energetically without having to worry that their actions, which they reasonably believed to be lawful at the time, would later subject them to liability on the basis of subsequently developed legal doctrine. Third, in this case, it is inconceivable as to how banning a constituent or deleting comments from an official government Facebook account would promote or assist an assemblyman to perform his duties as a lawmaker more boldly and energetically. Excuse me, but my principal problem is with your statement that the law is clear. No, the First Amendment law is clear, but the whole relationship of First Amendment to these new media methods and closing somebody out from them or not and so on seems to me clearly to be quite uncertain. The Supreme Court vacated our decision in one direction, but even before they did, they had granted cert on a decision which went in one direction. I don't know how you can say that we really know what ultimately the law of that sort would be, and that is what is relevant to qualified immunity, isn't it? Now, I don't like qualified immunity, but there it is. Your Honor, unlike in the other cases addressed by the Supreme Court, in this case, all of the allegations within the complaint must be accepted as true. Therefore, there is no issue as to whether Senator Stoufis was a state actor at the time that he blocked me from his official government Facebook account. Similarly, unlike in the night before. Can I pause you there? Are you arguing that whether one is a state actor is a question of fact and not a legal question? No, Your Honor, it's definitely a legal question. So why would we need to accept that just because it's alleged in the complaint? Because this case was determined upon a pre-answer motion to dismiss, and according to the district local rules, no discovery has occurred. But my point is, the only allegations that we need to accept in the complaint are factual allegations, right? Correct. We don't need to accept legal allegations. That would be a question for the court, right? So if you say a car ran through a red light, we would then make a determination about whether there are laws against running red lights, right? Correct, Your Honor. So if you allege that there is a law against running red lights, we don't have to accept that. We do that research for ourselves. So I guess my question is, whether one is a state actor, why would we defer to that because it's an allegation in a complaint? It is a legal question. Your Honor, it is a legal question whether one is a state actor. Nevertheless, considering all of the factual allegations within the complaint, the only conclusion would be that Senator Skoufis was acting in his official capacity and that his Facebook page, unlike Trump's Twitter account, which was his private Twitter account, Senator Skoufis were dealing with an official public Facebook account, which was used exclusively to communicate with constituents regarding his capacities as then Assemblyman and now Senator. By blocking me while allowing all of the other constituents to comment and interact. Yes, but accepting all of those things, we have to decide that we've all... Michael Scaraggi. I joined the meeting. I'm sorry. Did you hear me? I think there was... Why don't you proceed, Judge Calabresi? I think there was a Zoom issue. Yeah. Something has happened. I'm not seeing faces. We can see you. We can see you and we can hear you, Judge Calabresi. Yeah. I don't know why when I'm starting to talk, I lose everybody. Can you hear me? Yes, Your Honor. Yes. Even assuming all of your facts as they are, don't we have to decide whether that is state action? And isn't that something that is not yet clear and below? Your Honor, the Supreme Court has recognized several years ago already that social media is a form. And given that in this case, we're dealing... I'm sorry. Please proceed. I think there's just an issue with the Zoom right now. I'll try to follow up with the clerk. We're dealing with viewpoint-based discrimination. The reason why I was blocked from his Facebook page is because I was protesting an area of bigoted and racist and anti-Semitic comments. Yet he chose to block me, preventing me from protesting those comments while allowing the other commentators to continue to comment and have their comments visible for everyone to see. There is no difference. We're conducting this oral arguments via Zoom. Just because we're doing it over the internet, it's still a courtroom. Just because he blocked me from Facebook is not different than throwing me out from a traditional town hall meeting or something similar. Well, you say that, but what do you point to which tells us that, as a matter of law, as of the time that the defendant acted, so that he would not be allowed qualified immunity? I mean, you're telling us this, and you may be very persuasive, but where is the law that is clear? And the Supreme Court has been very clear that in qualified immunity cases, we have to have cases that tell us that. Your Honor, the Supreme Court has recognized that state actors or government officials are not to engage in viewpoint discrimination, even in non-public forums. The Supreme Court has also recognized, back in 2017, that social media is a forum. And this cannot be disputed. Just because, even if there's not a case exactly on point, I see that I go over my time. Please go ahead and finish your answer to Judge Calabresi. Even if the court hadn't dealt with social media, no reasonable assemblyman would have thought that his actions wouldn't violate my First Amendment rights. Thank you. Before we let you go, let me just ask briefly about mootness on your request for a declaratory and injunctive relief. You stand on your papers there, or have you changed your position at all? I will stand on my papers. All right, very good. Thank you very much. Thank you. We'll hear from your adversary. Mr. Vora? Yes, good morning, Your Honors. May it please the court, my name is Amit Vora, and I represent Defendant Epa Lee, Senator Skoufis. This court should affirm the dismissal of the District Court's action. To address mootness, the equitable claims are moot, not only because Senator Skoufis has seized the conduct, but also because he's not re-engaged in the conduct, despite multiple opportunities to do so. He unbanned Wagshall as soon as this complaint was filed, even before this court decided night. And since then, Wagshall has been free to post voluminously, but the Senator has not blocked him, hid any of his comments, or restricted his access in any way. Mr. Vora, Mr. Wagshall points to the four or more comments that remained hidden for a period of time. Why is that not a basis for challenging your assertion here? And those four comments are not a basis to revive his equitable claims, or his money damages claims. Now, to clarify the timeline here, the complaint was filed in April 2018, excuse me, March 2019, and that's when the Senator restored Wagshall's access. And when he restored Wagshall's access, he reasonably believed that he was also restoring those four comments, because that is just what someone intuitively would assume based on the word restore. Now, it turned out those comments remain hidden, but no one in this litigation, including Wagshall, even knew those comments remain hidden until Wagshall noticed that they were hidden and made note of that in his opposition to our motion to dismiss. So that wasn't until January 2020. And as soon as he made the parties and the court aware that those four precise comments still remain hidden, the Senator immediately unhid them. Your opponent says, though, that after this, your client has been saying, I won, I won, I won. And that suggests that he may do the same thing again, and therefore an injunction is required. Now, as to an injunction, qualified immunity, of course, does not apply. So we have to decide on mootness. Now, should we do anything with these comments? Your Honor, the Senator has had multiple opportunities to restrict Wagshall's access, but he has not done anything ever since this complaint was filed. The Senator unbanned Wagshall. Well, I know that the thing is submuted, and the question for an injunction is whether there is any chance that after we decide, if we decided no injunction, that he'd come back and do it again. In which case, injunction would lie. And are we to read these comments as suggesting that he would do it again? Let's suppose that instead of saying, I won, I won, I won, hooray, he had said, ha, I won. And as soon as the case is over, I'll do it again. Wouldn't that be different? If the Senator made that sort of comment, that would be different. But the Senator has made no such comment. Instead, the Senator is simply in a public arena with respect to the media, trying to defend himself against one of his critics. Now, in his declarations, and in his affirmative declarations to the district court, the Senator has repeatedly said that he will not reengage in this conduct. And we need not rely only on his words. We also can just see his actions. As soon as this complaint was filed, the Senator unbanned Wagshall and has done nothing to restrict Wagshall's activity. In fact, even before Knight came down, he unbanned Wagshall and didn't restrict any activity. After Knight came down, he continued to allow Wagshall to post voluminously and critically on his page. And now that the Knight decision has been vacated, that changes nothing from the Senator's perspective. If you'd explain that, please, because I would think that the vacator of the Knight decision might be understood by the Senator to liberate him from the constraints that it imposed, and to, you know, free him to start blocking citizens again. No, Your Honor, that vacator is not understood by the Senator to free him in any way. He remains committed to his sworn declaration that he will not reengage in this challenge conduct. And we know that because even before the Knight decision came down, he was not engaging in this conduct. So there's no reason to think that the vacator would prompt him to reinitiate this conduct. The only reason that those four comments remained hidden is because he reasonably but mistakenly believed that when he restored Wagshall's access, those comments would also be restored. No one knew that those comments remained hidden until very late in this litigation, when Wagshall pointed it out. Wagshall didn't even know this. Wagshall had a deposition and didn't even bring this up. It was not known until January 2020 that, oh, those comments are still hidden. And as soon as that became a fact that was known, the Senator immediately unhid those comments. Even the vacator still, I'm still just stuck on the vacator. Wouldn't a public official, including the Senator, potentially be in the position to say, well, there is no clearly established law anymore, so I'm really free to run the risk, and I'm going to block these comments that I find particularly odious to me? Would he still have a qualified immunity defense? The Senator believes that he is still bound by that decision because that's the last decision by this court that affirmatively decided this issue and conclusively resolved this unsettled area of law. Now, that decision is, but from the Senator's perspective, he submitted a reply declaration stating that he will not reengage in this conduct, and he has not said that he is going to no longer abide by that. He remains committed to it. And so he sees no reason why he should reengage in that conduct because of the vacator. That doesn't change anything. The only reason that we mentioned the vacator in our Rule 28J letter was to underscore the unsettled nature of this area of law. It's a subsidiary background point. Our point was that from the Senator's perspective, all the way back in August 2018, when he was first interacting with his page, trying to curate it, moderate it, there's no way he would have known that what he was about to do would violate the First Amendment. But so if he were to get irate about some posting and block someone tomorrow, he would be violating clearly established law and would not be entitled to a defense of qualified immunity. Is that your position? My position is that he remains committed to his reply declaration and will not run that risk. From his perspective, Night 2 still remains on the books and is binding as to him. And that's because of the affirmative statements that he's made to this court and to the district court. Now, these four hidden comments with respect to qualified immunity, I think, is the real crux of this case. It seems like all the parties agree that in August 2018, the law was unsettled. So when the Senator banned Waxhaw... But though it is unsettled, I believe it to be such that I will not make these comments again or do these things again. And then the person does it. Does qualified immunity apply in that situation? Or is qualified immunity lost because of the person's assertion? That's a that's a difficult question, Your Honor. I think in that scenario. Qualified immunity would still apply, but I don't think we run the risk of that happening here. The senator remains committed to his declaration and will not interact with Facebook in the way that he was interacting with it before. Well, qualified immunity might still apply. It might be that he is in contempt and that there would be other sanctions of some sort that could be imposed. That's correct, Your Honor, especially because we have a reply declaration in which he has affirmed that he will not restrict the access of Waxhaw. And that reply declaration still remains in effect. So if I can. Let me see if I can articulate what I think your position is. And you tell me if I'm understanding it roughly correctly. And maybe I don't want to put words in your mouth. So tell me if I have it right. The senator's declaration as a subjective manifestation of his own intent. Is relevant to the district court's decision about whether an equitable injunction remedy in this particular case is warranted. But because subjective intent of a particular person is not relevant to a qualified immunity analysis, it could very well be that a hypothetical public official in the wake of vacant or of night might be entitled to qualified immunity. But that would have no bear if they went ahead and, I don't know, barred comments on Twitter or Facebook. But that would have no bearing on whether an injunction should issue here because that does turn on subjective facts of a particular case. Is that just sort of am I? I'm paraphrasing somewhat, but I'm trying to see if that captures your argument. Yes, your honor. That captures my argument. And thank you for that helpful clarification. And if I may just briefly address why the four hidden comments also don't entitle Waxhill to money damages. Just a few brief points about that. Just another minute or two. Okay. Qualified immunity applies there because the senator reasonably believed that when he restored access, he also restored those four hidden comments. And those comments remain hidden because of inadvertence, not because of viewpoint discrimination. We know that because Waxhill was commenting freely and the senator did not hide any of those comments. The only comments that remain hidden were those four. If the senator were motivated by some viewpoint discriminatory purpose to suppress Waxhill's views, he would have hidden other comments, but he didn't. Also, Waxhill could have reposted those same comments, but he did not. And again, as soon as Waxhill made him aware in opposition to the motion to dismiss that those comments remain hidden, the senator unhid them. Also, a separate point is that night two, this court's decision in night, not clearly established the law with respect to Facebook comments. Okay, thank you very much. I think we have your argument. I will hear rebuttal. Mr. Waxhall, you have two minutes. Just a few short points. Respondent contends that no one even knew that they were hidden, including me. That is absolutely true, but that does not change the fact that they were in fact hidden. When he unblocked me and hid my comments, I was able to see the comments and that's why I didn't know and that's why I didn't testify about anything to it. So I didn't know that while I can see them, the public still can. In other words, my speech was still restricted just as it was when I was banned. Mr. Wax, can I ask you about that? Because if we're talking about qualified immunity, again, we're not talking about the idiosyncrasies of one or another person's knowledge, but we're asking whether a reasonable person or a person in the senator's position could have been reasonably expected to know that they were violating clearly established law. So you've got the question of even though Knight dealt with blocking people, you have the additional legal question of whether hiding and unhiding previous comments would be covered by Knight. But putting that aside, is there a question about whether given that you didn't know and apparently the senator didn't know that Facebook has this strange distinction between blocking and hiding? Does the record support an argument that a reasonable person would have nevertheless have been expected to know that when they unblocked, they somehow were failing to unhide considering you didn't know that either? Your Honor, the senator blocked me originally. He then unblocked me just because of this loss. The fact that if it's true that he didn't know that my comments remained hidden doesn't change the fact that my speech was still restricted because of his actions in blocking me and failing to unhide my comments. That's not the question. We're talking about the qualified immunity question. I think when you say it doesn't change the fact that you were blocked, that might give rise to a valid First Amendment claim on your part, right, that your speech was restricted. But now we have the secondary question of whether a person in the senator's position could have been reasonably expected to know that they were actually restricting your First Amendment rights, that they would have been expected to know they weren't in fact hiding your previous comments. That's the question I'd like you to address. Your Honor, as this court stated tonight, that hiding, restricting someone's speech if it's open to the public is just as if it's the same as blocking. Now, if I understand your question correctly, is if he subjectively knew that he in fact hid my comments. So in other words... If I do something that blocks your speech, but do not know that I am doing so, am I violating the First Amendment? That is, if without meaning to, I turn off a microphone and you are not able to speak. And I'm not negligent in doing that. And a reasonable person would not know that I was turning off that microphone because I wouldn't know it. Am I violating your First Amendment? Perhaps not, but this is not what the case is about. This is the assertion that it is not clear at this time that doing what he did would have had that effect. This is not the case here because he did originally block me and by failing to unhide his comments, he was definitely negligent. Yeah, changed my hypothetical to where the person originally intentionally did it, but for some reason was not liable for that. If he was, that would be that. But then he turns it back on, but without his knowledge and knowledge that he reasonably would not have, it doesn't turn it all the way up. So if it turns it up only too narrowly, would that be a violation? I would submit that such persons should still be liable. Good, good. That's your argument. Good. Thank you. All right, Mr. Wetzel, thank you very much. We have the arguments. We'll take the matter under advisement. Thank you very much. Thank you. Well argued.